# Commonwealth v. Stanley, Appellant.

*Criminal law—Embezzlement—Evidence—Examination of prisoner—Harmless error.*

On the trial of an indictment for embezzlement where the question of the genuineness of the signature of the prisoner to certain papers is raised, and a folded paper with the signature exposed is shown to the prisoner, and he is asked whether or not the signature is his, to which he answers that he cannot tell, and subsequently the paper is unfolded, and upon inspection he states that the signature is not his, the error in compelling the prisoner to answer the first question, if error it is, is entirely harmless in view of what followed.

On the trial of an indictment for embezzlement where the defendant's examination in chief takes a wide range covering practically the reliability of his mode of doing business and the accuracy of his bookkeeping, it is competent to show on his cross-examination that he was unreliable, that his bookkeeping was not accurate, and that he was mistaken as to the general scope of his business transactions, and that, as a witness, he was not credible. In such a case it is immaterial that some of the matters upon which he was cross-examined for the purpose stated were not covered by the bill of particulars.

*Practice, C. P.—Trial—Charge of court.*

A trial judge cannot be charged with error as giving binding instructions for conviction in a criminal case by reason of a single sentence in the charge, where it appears from the charge as a whole, and especially from that portion in immediate context with the sentence complained of, he did not have it in mind, and did not instruct the jury that they were bound to convict the prisoner.

On the trial of an indictment for embezzlement, where a simple business transaction is very much involved by the prisoner's explanations, it is not error for the trial judge to call the attention of the jury to the character of the transaction.

*Evidence—Practice, C. P.—Sending out papers with the jury.*

In Pennsylvania both in civil and criminal cases all books and papers

regularly received in evidence, except depositions, may be sent out with the jury.

On the trial of an indictment for embezzlement by an officer of a building and loan association, where it appears that the books of the association offered in evidence were kept by or under the direction of the prisoner, and that he had been examined in regard to them, and had endeavored to justify his conduct from them, such books may be sent out with the jury.

Argued Oct. 28, 1901. Appeal, No. 127, Oct. T., 1901, by defendant, from judgment of C. P. Lebanon Co., Sept. T., 1900, No. 71, on verdict for plaintiff in case of Commonwealth v. George M. Stanley. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Indictment for embezzlement. Before EHRGOOD, P. J.

From the record it appeared that George M. Stanley was indicted for embezzlement of the funds of the Economy Building & Loan Association of Lebanon of which association he was treasurer.

At the trial when the defendant was on the stand he was handed a folded paper with the signature exposed, and was asked this question:

" Q. That signature, you say, is a forgery? (Exhibit O.) Will you tell us whether either of these signatures, or both, are genuine, or forgeries? A. I can't tell you that. Q. Why not? A. Because I don't want to. Q. But you will? Mr. Hensel. I object to this witness being asked whether or not a signature to a paper is or is not genuine unless he is shown the whole paper. That is an unvarying rule of the court, no witness can be asked to say unless he sees the whole paper. Mr. Capp. The witness having denied that one of the receipts in evidence is not genuine, or two receipts in evidence, are not genuine, counsel now proposes to ask the witness by exhibiting to him two signatures, whether either or both of the signatures are simulated or genuine, or whether he can or cannot tell. Mr. Hensel. Counsel for the commonwealth having undertaken to show the witness certain folded papers purporting to bear signatures, counsel for the defense objects to the question propounded to the defendant, unless he is shown the whole paper, on the ground that no witness, except an expert, need

answer whether or not a signature to a paper shown him is genuine unless he be shown the whole paper. By the court. Objection is overruled; offer admitted; defendant excepts; bill sealed. [1] Q. Now, will you answer? By the court. It is the full signature. Witness. I can't tell you."

When the paper was unfolded and was inspected by the defendant, he said that the signature was not his.

On further cross-examination the prisoner was asked:

"Q. Did A. E. Gantz, the merchant right aside of your store, ever pay you any money for which you indicated credit in his pass book which you did not charge in the ledger? Mr. Hensel. I object. The gentleman can't introduce new elements into this bill of particulars in this way by cross-examining this witness about things we have not examined on in chief. Q. As I understand your position is you make this examination for the purpose of showing if he did not do it in this instance that you now propose to prove the jury shall infer that in the other cases in which he says he did not say they would be justified in saying he did not. Is that your position? Mr. Capp. The witness has stated the manner in which he did this business, and in which he carried it on. He has said that the manner in which it was done, cash entered in the cash book and from that posted to the ledger. We now propose to show the method of doing this business, the manner in which this association has been looted, to show that it was part of a general design, a part of the general purpose and plan of this defendant, and for the further purpose of contradicting the defendant upon a material matter in connection with this case, to wit: the honesty of his dealings with this association. For the purpose of affecting his credibility before the jury. By the court: Overrule the objection; admit the offer; exception to the defendant. [2] Witness: Mr. Gantz never paid me in money, he paid all his dues by check. Q. I mean cash or by check? A. I have no knowledge of having received any moneys from him that I didn't put in the cash book. Q. Did Carrie Cochran, prior to September 1, 1899, one of the cash charges against you here in the missing cash book, ever make such payments for the two credits in the ledger and which are charged in the cash book? A. I have no knowledge of anything like that. Q. Did Mrs. Stringbanm ever make such payments to you

prior to September 1, 1899, which are not indicated in the ledger, and which would have appeared in the missing cash, if they are charged? A. Not to my knowledge. Q. And I understood you to say that if these credits are in the pass book and not in the ledger, then it is improbable that they were in the cash book, because the posting was done from the cash book to the ledger? A. Yes, sir. Q. Do you know Penrose Focht? A. Yes, sir. Q. Do you know whether prior to September 1, 1899, or since, he paid you any money which is credited in his pass book and which is not credited in the ledger, or in the present cash book, or missing cash book?

A. No, sir, I have no knowledge of it at all. Q. Do you know whether there are entries? A. I have no knowledge of any."

The court charged in part as follows :

[You will have to find that he embezzled or used a portion of the funds of the association, and you must find that he knowingly took some of the association's money and appropriated the same to his own use.] [3]

[For instance, did he charge himself with $757 as cash when he only had a note for it? Did he charge himself in the cash book, or any other book, with $150 as having been received by him in cash when in fact he had only a note of $150? Is it true that he charged himself with a judgment bond of $600 as cash when he did not have the cash and simply had a paper for it? Is it true that he charged himself with $850 as a cash item in the Garrett judgment, and is that whole transaction true? That is one of the transactions I want you to examine very closely.] [4]

[I want to call your attention to one or two items upon which considerable stress is laid by counsel on both sides, I believe, and that is the Miller mortgage. Mr. Miller was a borrowing shareholder in the association. He had bought out thirteen shares. After he had paid in some he became delinquent. He was notified by Mr. Stanley. So far, we think, the testimony on both sides is about the same. When he was notified he gave notice to Mr. Stanley, the treasurer, that he would have that mortgage refunded, that he would pay it back, and asked him for the calculation and Mr. Stanley gave him the calculation. The refund value of that mortgage, as I re-

collect it now, was $2,325.81. Before the mortgage was actually refunded the testimony, I think, also agrees on both sides, that Mr. Miller asked him to take care of him. Mr. Stanley says he took care of him by advancing $650. That transaction I want you to scrutinize carefully also. He says when he advanced that money he took no paper, but simply went to his individual cash drawer in his store, took out $650 there, and put it over into the cash drawer of the Building and Loan Association and after the money was refunded, after he received the money from Miller on this mortgage, he then reached into the cash drawer of the Building and Loan Association, and took the identical money and placed it from it into his individual drawer. He charged himself with $1,687 as a part of the check of $2,325.81. He says there were arrearages to the extent of $338. He says he charged himself with the $650 in the cash book when he advanced the money for Mr. Miller. Now on its face, is that true? If he advanced $650 to take care of Miller, what would he ordinarily do? If he charged it in the cash book, what for? What would he charge it for? He says he charged it as arrears, I think, for two years. He was under the impression that Miller was in arrears for the whole time, that is, for the two years. That is charged in the missing cash book. He also charged himself with $1,687 and some cents, as a part of the check. If he charged himself with the $650 as cash in the cash book and also with the $1,687 and some cents, then he accounted for the whole of that refund value. There is nothing in the ledger to show that he charged himself with the $650. Now is it true that all the items in the cash book were transferred to the ledger? If they were all transferred into the ledger then he did not charge himself with $288, and if he did not charge himself with the $288, nevertheless after he had advanced it to Miller, took it out of the individual cash drawer and put it in the association drawer, it became the association's money and if he took it out of the association's money and put it back into his individual drawer, then he took $288 out of the association's money in cash for which he did not account.] [5]

Verdict and judgment of guilty.

*Errors assigned* were (1, 2) rulings on evidence, quoting the

bill of exceptions.    (3–5) Above instructions, quoting them. (6) In permitting the books of the association to be sent out with the jury.

*W. U. Hensel,* with him *L. Grumbine* and *E. W. Miller,* for appellant.—A witness, asked to pass upon his own alleged signature to a writing, must be permitted to see the whole body of the writing: North American Fire Ins. Co. v. Throop, 22 Mich. 160.

The commonwealth should not have been permitted to cross-examine the defendant on alleged embezzlements not included in the indictment, the bill of particulars, nor in the examination in chief: Neff v. Landis, 110 Pa. 204.

One sentence of the judge's charge was a peremptory order to the jury to find the defendant guilty: Winters v. Mower, 163 Pa. 244.

The learned trial judge erred in permitting the jury to take out with them the books of the corporation: Alexander v. Jameson, 5 Binney, 238; Udderzook v. Com., 76 Pa. 340; Dun v. People, 172 Ill. 582; 50 N. E. Repr. 137; Rawson v. Curtiss, 19 Ill. 456; Moore v. McDonald, 68 Md. 321; 12 Atl. Rep. 117.

*George B. Woomer* and *Thomas H. Capp,* with him *E. E. McCurdy,* district attorney, for appellee.—Throughout the United States, with the single exception of Michigan, the rule is that a party who denies that which purports to be his signature to have been made by him, he may on cross-examination be asked to write his name or other specified words for comparison by the jury: See Smith v. King, 62 Conn. 515; 26 Atl. Rep. 1059, Chandler v. Le Barron, 45 Me. 534, Hayes v. Adams, 2 Thompson and Cook (N. Y.), 593, Bronner v. Loomis, 14 Hun, 341, Roe v. Roe, 40 N. Y. Super. Ct. (8 J. & S.) 1, Sanderson v. Osgood, 52 Vt. 309, King v. Donahue, 110 Mass. 155, Williams v. Riches, 77 Wis. 569, Hickory v. United States, 151 U. S. 303; 14 Sup. Ct. Repr. 334, and Johnson v. Com., 115 Pa. 369.

It is not enough that the appellant was submitted to an improper cross-examination, even if such were the case, he must in addition to this show that his answers to this cross-exami-

nation injured him before the jury: Phelin v. Kenderdine, 20 Pa. 354; Powell v. Agricultural Ins. Co., 2 Pa. Superior Ct. 151; Van Horne v. Dick, 151 Pa. 341; Fitzpatrick v. Reiley, 163 Pa. 65.

The appellant admits the rule of law permitting papers offered in evidence with the exception of depositions to be sent out with the jury, but denies its application to criminal cases. We submit that Udderzook v. Commonwealth, 76 Pa. 340, rules this question the other way.

The question appears to have been decided in the same way in criminal cases in the following states: People v. Formosa, 61 Hun, 272; 16 N. Y. Supp. 753; Bersch v. State, 13 Ind. 434; People v. Cochran, 61 Cal. 548; English v. State, 31 Fla. 340; 12 Southern Repr. 689; Osburn v. State, 7 Ohio, 212.

OPINION BY BEAVER, J., January 21, 1902:

Plaintiff was indicted and was upon trial in the court below for embezzlement.

1. The question of the genuineness of his signature to certain papers was raised and, upon cross-examination, he was shown a folded paper with the signature exposed and asked whether or not that was his signature. Objection was made and the court directed the witness to answer the question. His answer was, "I can't tell you." The paper was subsequently unfolded and, upon an inspection of it, he replied that the signature was not his. The answer was accepted by the commonwealth and the trial proceeded as if his final answer was conclusive. Without entering into any discussion of the abstract questions involved, it is enough to inquire whether or not the defendant was injured. We cannot see that he was. His answer that he did not know whether the signature was his or not, when the paper was folded, surely could not injure him in the opinion of the jury and his final answer that the signature was not his, when the paper was unfolded, did not put him in the attitude of having been mistaken in his former answer or of having endeavored to evade an intelligent answer to a proper question. If error was committed in compelling him to answer the question in the first place, which is by no means clear, it was entirely harmless in view of what followed.

2. The commonwealth furnished the defense two several bills

of particulars in which were set out the specific acts of embezzlement upon which a conviction was to be asked. The defendant was examined in chief as to the manner in which he kept the books of the corporation, which was a building association, of which he was treasurer. He testified as to the entries of certain transactions alleged by the commonwealth to be erroneous and evidence of the defendant's guilt. His examination covered a wide range and involved the manner in which the books were kept and the reliability of his business methods. Upon cross-examination, the commonwealth asked the defendant in regard to money paid him which had been entered in the pass books of members but not charged in the ledger. Objection was made that the particular cases referred to had not been contained in the bills of particulars furnished the defendant, the object being to show a mode of doing business different from what the defendant had testified to in his examination in chief and also for the purpose of showing his general unreliability and of affecting his credibility as a witness. The court, upon objection, allowed the cross-examination, which is here assigned for error. If the commonwealth had offered evidence covering these transactions in chief, in order to substantiate the charge in the indictment, it would undoubtedly have been rejected as not being covered by the bills of particulars above referred to, but the questions were asked upon cross-examination of the defendant himself and much greater latitude is to be allowed in such an examination than in the presentation of the case of the commonwealth in chief. The defendant's examination took a wide range, covering practically the reliability of his mode of doing business and the accuracy of his bookkeeping. It was surely competent to show, upon his cross-examination, that he was unreliable, that his bookkeeping was not accurate and that he was mistaken as to the general scope of his business transactions and that, as a witness, he was not credible. We do not think the commonwealth went beyond the well established principles governing the cross-examination of a defendant. The subject has been fully discussed in the case of Commonwealth v. House, 6 Pa. Superior Ct. 92. In that case, President Judge Rice says: "The power of cross-examination has been justly said to be one of the principal, as it certainly is one of the most efficacious tests which the law has

devised for the discovery of truth. It is not easy for a witness who is subjected to this test to impose on court or jury, for however artful the fabrication of falsehood may be it cannot embrace all the circumstances to which a cross-examination may be extended: 1 Greenleaf on Evidence sec. 446. There is no reason for making the test less rigid where the witness is a deeply interested party. The extent to which a defendant in a criminal case may be subjected to this test is a question upon which the authorities do not wholly agree. In some of the states of the Union it is held that he may be cross-examined as to the whole case. In others, that the cross-examination should be confined to facts and circumstances connected with matters stated in the direct examination. In either view of the right of cross-examination the court did not transgress the rules of evidence nor violate the defendant's constitutional right by holding that the questions were pertinent to the matters stated in his direct examination and that it was his duty to answer them. The facts admitted were pertinent to the issue and the admissions were not obtained by illegal compulsion." This applies in the present case. Although not referring to the specific accounts, concerning which the direct examination was directed, the cross-examination was, nevertheless, pertinent to the general question of the ·defendant's reliability and accuracy and also as to his credibility as a witness.

3. The sentence from the charge of the trial judge in the court below, which is assigned for error and is stated to be a peremptory order to the jury to find the defendant guilty, is taken from a paragraph which is clearly antithetical. Read in connection with the context, the meaning of it is plain and is not, in any view of it, a binding instruction. The previous context is as follows: "The fact that this Building Association became insolvent is not of itself an evidence of guilt of the defendant. If there was nothing more in this case than the fact that the Economy Building & Loan Association was insolvent, we would say to you that you could not convict the defendant. The allegation on the part of the commonwealth is, however, that the defendant helped, by peculations or embezzlements, to make this association insolvent, and it was only for that purpose that the fact of insolvency was permitted to be introduced before you. If this association was insolvent, un-

less the defendant took some of the association's money and appropriated to his own use such money, he has not embezzled any." And here comes the antithesis, which is complained of : "You will have to find that he embezzled or used a portion of the funds of the association and you must find that he knowingly took some of the association's money and appropriated same to his own use." The clear implication is that, "in order to convict," or "if you find the defendant guilty, you will have to find," etc. No discussion can make this plainer than appears upon the surface of this part of the charge. No one seems to have been impressed with the defendant's present view at the time the charge was delivered, for, if the defendant's counsel had taken that view of it at the time, the attention of the court would undoubtedly have been called to it, for it is at variance with the charge taken as a whole and with the several parts of it which deal with the question of the defendant's guilt. The court is especially particular to tell the jury that they must remember the facts. The closing paragraph of the charge shows conclusively that the trial judge did not have in his thought the necessary conviction of the defendant. The jury are to reconcile the testimony, if it can be done. If not, then to determine what testimony is truthful and what untruthful and further : "If, from all the testimony, you are satisfied that he has not appropriated knowingly any funds of this association, then it is your duty to acquit him. If you have a reasonable doubt as to the guilt of the defendant—a doubt arising out of the evidence—such a doubt as would make an ordinary business man hesitate in a business transaction—then he is entitled to the benefit of that doubt and is entitled to an acquittal." The rights of the defendant were carefully guarded throughout the charge and in no place, so far as we can understand it, is there an intimation that the jury should necessarily convict. It would be a reflection upon the intelligence of the jury to assume that they could, by any possibility, have been misled by the sentence in the charge, which is alleged to be erroneous, taken in the connection in which it occurs.

4. As to the complaints of bias and giving an adverse coloring to the recital of facts in the charge, as set forth in the fourth and fifth specifications of error, we cannot see that the portions of the charge specified are fairly open to this criticism.

It is true that the trial judge evidently regarded the transactions, upon which he commented, as somewhat pivotal, and asked the jury to examine them very closely, but we cannot say that this amounted to more than an intimation that these transactions were of vital importance and that they should examine them with reference to the truthfulness of the defendant's explanation. Confessedly, what ought to have been a very simple business transaction was very much involved by the defendant's explanations and there was no injustice to the defendant in calling the attention of the jury to the character of them.

5. The commonwealth requested the court " to permit the jury to have access to the two ledgers, cash book, the several checks offered in evidence and the several orders to Mrs. Killian, for inspection by the jury, as well as the several statements on file in the department and the list of liens testified by Mr. Cherst to have been prepared by himself and the defendant, for the purpose of showing the different payments and delinquencies thereon." This request was objected to by the defendant's counsel, on the ground that certain other books which explained the entries in the books in evidence were missing and that " certain explanations of the exhibits which are asked to be sent out not accompanying them " (evidently referring to the explanations of the defendant himself) " the defendant will be at a serious disadvantage." The books were allowed to be sent out with the jury and this is complained of in the sixth specification of error. It has long been the general practice in Pennsylvania to send out with the jury all books and papers regularly received in evidence, except depositions, which, being in the nature of oral testimony, are not allowed to be sent out. Hendel et al. v. Berks, etc., Turnpike Road, 16 S. & R. 92, in which Mr. Justice ROGERS says : " The rule in Pennsylvania, as I have always understood it, is that all papers given in evidence in the trial of a cause, except depositions, are to be sent out with the jury. The inspection of the papers is indispensable, for without them, it would in many cases be next to impossible for the jnry to come to any correct conclusion. The only reason why depositions are not also sent out is because the witnesses examined at the bar are not permitted to accompany the jury :" McCully v. Barr, 17 S. & R. 445. That the rule is not differ-

ent in criminal cases is shown in Udderzook v. Commonwealth, 76 Pa. 340, in which, at the request of the jury, they were allowed to take out with them " the letters, check, due bill and application for insurance papers which had been proved, read in evidence and commented on in the trial." It is true that in the case of general account books the curiosity of the jury may lead them to investigate accounts not regularly in evidence but, where the plaintiff, from a desire to have the condition of his own business and the accounts of others than the defendant withheld from the investigation of the jury, from mere idle curiosity, courts will, upon application, have such portions of account books as were not in evidence sealed, in order to prevent the jury from inspecting them. If anything in the account books in evidence was improper for the inspection of the jury and the defendant had so indicated, the court might have controlled their inspection in such a way as to prevent any harm being done. These books, however, were those of a corporation and were to be so kept as to be open to inspection at all times by the officers or agents of the state banking department, whose business it is to investigate building and loan associations (Act of February 11, 1895, P. L. 4) ; they were kept by or under the direction of the defendant and were under his control. He had been examined in regard to them and endeavored to justify the conduct of his office from the books. There would seem to have been peculiar propriety in permitting the jury to examine them. Such an examination would naturally only tend to recall the explanations made by the defendant as to particular entries and transactions and would have a tendency to help rather than hinder the memory. We see no error in the action of the court in this regard.

The case was laboriously and ably tried. The trial occupied a number of days, the transactions were numerous and complicated and were necessarily dwelt upon at some length in the charge of the court below. Taking the charge as a whole, we think the defendant's rights were well guarded and that no injustice was done him which requires any interference on our part.

Judgment affirmed and record remitted to the court below in order that the sentence may be fully carried into effect.